Timing is everything, and in this particular case, if the Court please, the government's where this defendant should be freed. In 2004, 2005, and 2007, there were events surrounding two pieces of real estate in Chicago, just call them 46th Street and 54th Street. In 2004, acting alone, as far as the record reflects, the defendant purchased both parcels of real estate, their commercial ventures, on the southwest side of Chicago. She made out HUD applications, I'll just call it HUD for ease of reference, or applications for ease of reference, and in those, at the very least, they included that she would live on the premises she was buying. Now, it's a little odd that she said she would do that, purchasing both properties a month apart, and at that time, she was married with an adult, with a child, living with her husband in Chicago. Could I just maybe cut ahead, Mr. Ackerman, and say, on your statute of limitations point, the indictment charges these two versions of fraud, the bank and the mail fraud, and they're schemes, and at least one act of each scheme takes place inside the 10-year statute of limitations. So if it is a 10-year statute of limitations, and I understand that that's part of your argument, too, but if it is, then the statute of limitations isn't the problem. Then, to decide whether the 10-year statute applies or not, we really need to dig in a little more to the merits of the case, and all this business about the difference between Citibank and City Mortgage, and who's a financial institution, who isn't, and that strikes me as much more merits-based. So if you want to spend your time on the subject, I will cut to the chase. The government's sole linkage to Citibank is a single document. That single document is a HUD form, or one of the HUD forms, on 46th Street, and on April 16, 2007, is when the event Okay. Citibank, a member of the Citigroup, the bigger umbrella, by all accounts was FDIC-covered. CMI, the lender, was not. So can I ask you whether there might be a distinction here between the mail fraud count and the bank fraud count? Because the mail fraud statute simply looks for conduct that affects a financial institution, and we have the testimony in the record of the city person who says this money came from Citibank, it moved over to City Mortgage, it's all sort of swapped around in a day. It seems to me a jury could find that that affects a financial institution. If you, on the other side, on the bank fraud side, have to have specific intent that you're defrauding a financial institution, I think that's a heavier lift for the government, because I'm not sure where in the record we have evidence that O'Brien herself knew where these funds were coming from, or whether they were coming all the way back into Citibank as opposed to City Mortgage. The specific intent goes with mail fraud as well as bank fraud. But all you have to have specific intent, you just have to affect a financial institution. I don't know that the specific intent part deals with that. The settled Seventh Circuit precedent clearly holds that there is specific intent required, and that specific intent must affect the financial institution. All agree that in 2007, CMI and all these subsidiaries underneath... No, right, I know they changed the definition later, not relevant to her case. ...could not sustain because there is no impact on the bank and the financial institution was the bank, not CMI or its related entities. Right, I know that. That's the heart of it. But she... If the court please, that's the heart of it. The government points to the HUD-1s, the government, you know, when some of these sales take place where Citibank's interest is disclosed. I apologize, I couldn't hear you, Your Honor. You know, the HUD-1 form that accompanies any real estate closing. Yes. And the government argues that Citibank, not Citimortgage, Citibank's interest is disclosed on that form. Citibank only appears, if at all, on a $73,000 home equity line of credit, and the dispute below was, wait a second, did CMI write those loans also? The answer was yes, according to this record. And I cite in the brief the various pages where this appears. Now, clearly, and I absolutely agree, there was something on one form that said Citibank, and that had to do with Mr. Kwan's loan, but she never saw his loan documents because she's not entitled to. So really what you had here, when you take this record as a whole, Mr. Kwan didn't intend to live in any of the four places he built lending institutions in April 2007. There were four of them. And that's borne out by Art. 205 in this record because when the alleged co-schemer, Ms. Bartko, pled guilty, her plea agreement reflects what those two were up to. And so during April 2007, Mr. Kwan, never arrested, never charged, made off with roughly $2 million buying four properties and getting the cash back. So we don't know about him at all. Maybe the government can tell you I can't. It's not his case, Amy, but we're trying to focus, as to the two different charges, on whether, you know, the elements have been proven. We don't, from the defense standpoint, the judgment of acquittal should have been granted, and there were two of them. There was one at the close of the government's case verbally and a lengthy one later on. And I included – But the jury must have found that she knew that – well, there was evidence in front of the jury. I want to go back to these HUD-1 forms that the government talks about, that she knew that Citibank itself was affected by these financial transactions. There is not a shred of evidence that anybody affiliated with Citibank or Citigroup, those financial institutions, ever saw, ever heard of, or ever looked at anything this defendant did. Nothing. And part of the law in the recent cases we cite from the sister circuits, and the case we originally relied on only, Bouchard, cites the Seventh Circuit's case, whatever the name of it is anymore, I don't know, as part of its opinion showing that the affected financial institution must be realistically known to the defendant in order to be affected. She's a pretty sophisticated defendant. I'm sorry? She's a sophisticated defendant, a lawyer, real estate license. Chief Judge Wood, she's not entitled to a good conduct medal. I'm not saying that. But I am saying that in this particular case, if the government had charged in a timely fashion, there wouldn't be any of us sitting, and I wouldn't be standing here today. Be that as it may, the government didn't. That's not her fault. The government could have charged much sooner, much quicker, and it wasn't until 2009 when entities like CMI and its several subsidiaries became financial institutions. That's the case for the defense. I won't take up any more of the Court's time. Okay. Thank you. Thank you. Mr. Leva. May it please the Court, Edward Leva on behalf of the United States. The District Court did not err in denying Defendant's Rule 29 motion for judgment of acquittal because the evidence at trial, when viewed in the light most favorable to the government, was more than sufficient for a properly instructed jury to conclude that the defendant was guilty on both counts. So would you address then, I'm really having trouble, other than some hand-waving, seeing how the government shows that O'Brien has the specific intent to defraud Citibank. Thank you, Judge. It starts with, there's two loans here, and I just want to clarify the $73,000. There's a $73,000, but that's the Kwan. Correct. But the defendant was intimately involved in this transaction. But do we know that, see, her sophistication cuts both ways in my view because maybe people on the street don't know that there could be a bank  that looks a lot like a bank but isn't really a bank and all of these other things. This particular defendant does know those things. So if she sees that she's dealing with Citibank, she knows she's not dealing with Citibank. And there is no veil-piercing theory that just says all affiliates of any bank are automatically part of the bank. That's not the way the law of corporate organization works. Right, but the $73,000 loan is a Citibank loan. But it's not to her, though. Why do you attribute Kwan's loan to her? Because of her involvement with the deal. She's the seller. She's the seller's attorney. She's present at the closing where these documents are signed. She didn't sign them, though, did she? She signed the HUD one for the $292,000 loan, which disclosed the $73,000 loan. But it doesn't disclose Citibank on it, does it? That HUD one does not disclose Citibank. Right, that's the problem. Right, but given her involvement, a rational jury could have inferred that the defendant didn't know this. You're just saying, so the best you have is that just sort of generically she's involved in these transactions. And somehow this very picky point about financial institution organization would have seeped through the ether somehow as she's sitting there in the room. Anyone who's done real estate closings knows that there's a stack of paper this high that you're signing your way through. And, boy, it's weak, you know, when you don't really have anything where you can say to the jury, she signed this piece of paper, this piece of paper said it was a Citibank loan, ergo she knew. Or a testimony from her. I went into Citibank to talk about the loan or anything. Right, we don't have that document, but we do have— Or the testimony. We do, but we do have testimony from Judy Taylor, who's the vice president of Citi, who said that when there's two loans with regard to Citibank, the first loan is always a Citimortgues loan, the second loan is a Citibank loan. That may be, but why do you tie that? You have to tie that to the defendant, don't you? Yes, we do. And for 1344 subsection 1, we do need to know, we do need to show specific intent. And given her involvement in the scheme, we do think that she intended to defraud Citibank here. But you're guessing over the big detail, though. Because until 2009, if you can't get her brain, you know, from Citimortgage over to Citibank, you haven't done what you needed to do. Well, I think it's important to remember that there's the two prongs to the bank fraud statute here. And under 1344.2, under the Loughran case from the Supreme Court, the government does not need to show specific intent to defraud a financial institution. And under 1344.2, the government needs to show that the defendant engaged in a scheme to obtain money or property under the custody or control of a financial institution. And, again, the funds here came directly from Citibank for both of these loans. Well, the Taylor evidence gives you that. I mean, to the extent you need that, I agree with you that the Taylor evidence crosses that bridge. And so, given her, again, her involvement with this particular transaction, she's the one who's orchestrating the fraud. She's making kickback payments to the true buyer. She knows Christopher Kwan is just a straw buyer. She knows that there's two loans involved. It's not unreasonable for a rational jury to conclude that she knew that the funds that were going to be funding both of these loans came from Citibank, which was a financial institution at the time. Well, again, Taylor knows that. But why does she know that? Because of her involvement in the industry and knowing how. Do you have any evidence that she knows about this corporate structure of Citibank? Citibank's a huge institution. It's one of the world's biggest banks. Right. And in the Rabufo case, which we cited in our brief, the name similarity between the parent bank corporation and the subsidiary was similar enough for the evidence was sufficient that the defendant would have known. Well, see, there's where I have a problem given her sophistication. You know, if you were involved in a transaction, you might well think that there was a difference between Citimortgage and Citibank because you know that corporations have various subsidiaries and other kinds of affiliates through which they do business. I sure didn't know that before I started law school. But I think if she sees it's Citimortgage, why is she not entitled to rely on the fact that it's Citimortgage? Even if she sees, and she does see on the HUD-1 for the $292,000 loan, that Citimortgage is the lender. Right. So it's not Citibank? It's not Citibank. But the funds for that loan did come from Citibank. But if she doesn't know that, why are we attributing that knowledge to her? It was a reasonable inference for the jury to make based on the evidence, based on, again, her involvement, based on her feelings with Mr. Kwan and Ms. Barco. So the jury is allowed to infer any time two names are separate, that the one that you see on the piece of paper is actually not the funder? That's a big theory. But it's more than just that. I mean, she is experienced in this particular industry. She's worked as a mortgage loan originator. She's been to multiple closings. She owns her own real estate company. She's a licensed attorney. She's intimately, again, involved. There are a lot of banks in Chicago. Yes. I mean, you think she knows that much about every single one of them? No, not necessarily. But she has prior dealings, particularly with Citibank, who was a secondary successor lender on one of her prior loans for the 46th Street property. So she does have direct experience with Citibank. It's not unreasonable for her to know how the funding at Citibank works with city mortgage. But why would she be involved in that at all? If she has a HUD-1 where Citibank directly issued the loan, then she would think it was Citibank issuing the loan. If she has a different HUD-1 six months later where it was city mortgage, why wouldn't a reasonable assumption be that it's city mortgage advancing the funds? And that could be one reasonable conclusion that a jury could make. I don't know how a jury could conclude anything else without some evidence, without evidence that she looked at Kwan's form and said, oh, this is actually really Citibank. I don't think this is impossible to prove, but I don't know where the evidence is in this record. And I would say her presence at the closing, where these documents were signed. Even without any evidence that she actually saw them or signed them. She did not testify, and neither did Kwan, so we do not have testimony. And the real estate closer didn't testify. I made sure that every person in the room saw every document. But there was testimony about how closing. We did not have that particular testimony, but there is testimony about how the closing works, the role of the seller, the role of the seller's attorney, which the defendant was here. She's preparing closing statements. She knows what's going on. She knows that the house is being sold for $365,000, so $292,000 isn't going to cover the entire mortgage. So there's a $73,000 mortgage that's out there. It's a Citibank product. And to address one point that defense counsel made, she doesn't need to make any representation directly to Citibank in order for the conviction to stand under 1344-2. If you look at the Loughran case, the court held that the standard is the false representation needs to naturally induce the bank to part with its money. And in that case, there was no direct representation made to the bank. It was fraudulent checks being deposited at a target. So the fraud was being directed at target, but it ultimately caused the bank to part with its money. We've got the same situation here where the misrepresentations by the defendant, namely not disclosing that Barco was the true buyer, not disclosing the kickback payments that she made to Barco, that was naturally induced Citibank to part with the funding for both the $73,000 and the $292,000 loan. And I follow you that far. It's getting her knowledge into this, knowledge beyond what shows up on the paper, any paper that we're confident that she saw, such as those that she signed. And, you know, the district court did rely on the factors that I've mentioned here, and it's the government's position that the district court did not err in this conclusion and that a rational jury could still convict the defendant. Turning briefly to the mail fraud count. Yeah, sure. And I think you hit the nail on the head. The language is different, yeah. I'm sorry, I didn't mean to interrupt. No, no, go ahead. Oh, I think you hit the nail on the head earlier. It's a different standard for mail fraud. And what the government had to show there is that the defendant engaged in a scheme to defraud and that the scheme affected a financial institution. Now, does she have to know? Mr. Ackerman argued that that doesn't help you at all because she has to know that her scheme is going to affect a financial institution. So she would have to know that even though she's dealing with city mortgage, it's ultimately going to affect Citibank. And I think defense counsel is wrong on that point, and I'd point this court to the Marr case, 7th Circuit, 2014, where the court, and this was a wire fraud statute affecting a financial institution, but the same standard applies here. For mail fraud, the government needs to show only that the defendant acted with intent to defraud someone, a financial institution need not be the intended victim because the object of the fraud is not an element of the offense. So, again, it's the scheme to defraud and that it affects a financial institution. Clearly, the fraud here affected a financial institution for the reasons I've discussed. If there are no further questions, I'd ask that the court affirm the judgment of the district court. Okay, thank you. Thank you. Does Mr. Ackerman have any more time? Yeah, okay, Mr. Ackerman. I won't take all the time I have. The fact that Ms. O'Brien at the time was an unemployed lawyer, she was on maternity leave, that does not mean she has some special knowledge, and the lead case that we cite in our opening brief, U.S. v. Bouchard, young Mr. Bouchard, Michael Bouchard, I believe his name was, had been a real estate lawyer for 12 years, and the Second Circuit held that he didn't have to know and didn't know that Lehman Brothers was covered by FDIC, and therefore the subsidiaries that he dealt with and arguably defrauded could not stand the conviction because no financial institution was affected. Now, to attribute special knowledge to Ms. O'Brien as unfair truly is. She was working for the state of Illinois. She was on leave. She did this enterprise to, I'll skip all the rest, but my opponent said she dealt with Citibank as a successive lender. That's true, but she doesn't know that because Arden Mortgage gave her, saw to it that she got the loan, and they are the FDIC not covered entity that gave her that loan in 2004. Now, the fact that Citi came and was a successive lender has nothing to do with her. They never said, hey, we're buying it. Is it okay with you? There's nothing like that in this record. All that's in this record is that they were a successive lender. She paid on time. They were paid off when she was refinanced by New Century. That's what this record reflects, nothing more. So with all due respect to my opponent, to argue the successive lender aspect as something that gives her special knowledge here is simply unfair. This record, there should be grave doubt in the court's mind, and if there's grave doubt, there's a theory of equipoise going back, I think, to 1994 or something, O'Neill versus McIntosh, Mac and somebody, where the court in a 2254 case said, wait a second, if the district court in a habeas case has grave doubt and arguably the evidence is in equipoise, the defendant must prevail. That's what this case is. No more, no less. Thank you. All right, thank you very much. Thank you. Thanks as well to the government. We will take this case under advisement.